Good morning, your honors. Donald Cook for Mr. Reed, who's present in the court, along with his five-year-old daughter, Romani. Mr. Reed, Romani, good morning. By the time the deputies had Mr. Reed at the Sentry Station, they knew that this warrant, the Inglewood warrant, identified its subject by the single most important identifier that a warrant would have, the subject's fingerprints. That's the CII number. Yeah, they had the number, but the problem is that the same individual can have more than one CII number, is that right? Well, no, no. The record doesn't show that? There's no testimony to that effect? There is some testimony. Well, first of all, let's cut to the chase. First of all, the answer is yes, there is some testimony to that. But to compare a CII number, like two people can have the same name, like two people have the same CII number, is a mistake. Because by design, a CII number is supposed to be unique to one set of fingerprints and no other set of fingerprints. But mistakes happen, and sometimes multiple CII numbers get assigned to the same individual. Well, there is no evidence in this case that the CII number here was believed or suspected that it was one of multiple CII numbers assigned to the warrant subject. But he met every other descriptor in the warrant. That's true. So is your challenge to the initial arrest that there was no probable cause to conclude that he was the person named in the warrant? They had reasonable grounds to detain and investigate, because you're exactly right. All those other descriptors matter. Okay. So they could arrest him. Well. Right? They could take him to the station to find out. Well, isn't that an arrest? You call it arrest? Fine. The taking of him. People that get in the back seat of a police car and go to the station think they've been arrested. Sure. I mean, their liberty has been interfered with. Well, sure. But I'm just pointing out that the definition of an arrest, what a court says versus what a layperson says, are two different things. For example, take the case of ‑‑ So was there probable cause to arrest? No, there wasn't probable cause to arrest, because you have to consider all of the information. And the information the deputies had in the field was this warrant identified its subject by his fingerprints. Mr. Reed was saying this is a mistaken identity arrest. In the field, I suspect officers have heard somebody say it's not me more than once. Absolutely. Absolutely. So in the field, the officers heard that, but everything else they had to work with in the field suggested that this is the person described in the warrant. Not true. What the officers also had in the field was Mr. Reed's judicial clearance for the Compton warrant. Now, the officers are holding him on an Inglewood warrant. Mr. Reed thinks the warrant he's being stopped for is the same as the Compton warrant. What Mr. Reed thinks really isn't the question here, is it? What's important is the officers realize that he has some evidence supporting his claim that he's been victimized by identity theft. Now, that doesn't mean you have to cut him loose. All that means is you've got a warrant, identifies its subject by his fingerprints, you've got this man claiming it's not him, and he's got some evidence that seems to say that maybe it's not him. Now you've got him at the station, right? Not in the field anymore. Run the CII number. First of all, at that point, are the arresting officers involved anymore? At what point do they turn him over to others? Well, the records indicate that they had him up until about, I think, about 10.15, 10.20. They stop him in the field shortly after 9 o'clock, take him to the Sentry Station, and then Sentry Station booking personnel have him roughly from 10 o'clock onward. So at that point, aren't the arresting officers basically out of the picture? They brought him in. They're not the ones responsible from that point forward. I would say they are responsible. I'm hearing a lot of resistance. I'm not going to press the point any further. The officers don't stay involved with the person they brought in. The logical thing for them to do is to turn them over to the booking people and go back in the field. That's where they're supposed to be. I would submit that the officers under the facts of this case at least have a duty to run the CII number because it is the single most important identifier on the warrant. Why is it their individual duty? Why isn't that responsibility assumed by the booking people? It's also their duty as well. Why? Why is it the booking officers? No. Why is it the arresting officers? Their job is to bring him in. They brought him in. Their job is to get back into the field. And you're suggesting they have an ongoing responsibility to stay with the process. I don't understand that. The reason they have the responsibility here is in the field, they're told, this warrant identifies its subject by his fingerprints, the CII number. In the field, they're hearing the complaints. They get to the station. It only takes a few seconds to run the CII number. That's why under these facts I'm saying they have the duty. Now, that's my argument. Do you have any case authority for that? Sure. The officers are charged with the collective knowledge of everybody involved in this detention, arrest, and booking. That's United States v. Sutton, a criminal case where in finding probable cause for the detention, the court looks at the knowledge of all the officers involved and not just the officers who have physical custody of the subject. That's a far cry from assigning individual civil liability to somebody who's turned over the arrested suspect to booking personnel. Do you have anything to support the proposition that the arresting officer has a continuing obligation to avoid personal liability, to stay individually with the process? Merriman v. Walton, a decision by this court where the court held that the officers have a duty to consider all of the information addressing the issue of probable cause. And I would submit in this case since the officers know from the get-go this warrant identifies its subject by fingerprints, then they need to check that as well. So, but let's talk about the booking person. I guess the other thing is when we're talking about authority, there's Baker v. McCollum, and in that instance the detention was longer than it was here. True. And it seems like it's sort of uncannily similar with the bad sibling, you know, doing the, you know. So why isn't the fact that Reed's detention was shorter than the plaintiff's in Baker v. McCollum dispositive? Because in the Baker case, the arrestee matched every descriptor on the warrant because of the, you know, stolen identity. Here, that was not the case. Mr. Reed told him his Social Security number. The Social Security number was on the warrant. The warrant identified its subject by, again, the fingerprints. I thought his testimony was they never asked him for his Social Security number. No. His testimony was, I don't recall one way or the other. So how can you then make a representation to us that he told them? Because the Deputy Jimenez says my practice is, particularly in a case like this where someone is claiming I'm not the person on the warrant, my practice is to ask him for the Social Security number. That's his testimony. Mr. Reed's testimony is, while I don't recall one way or the other, if I was asked, I would have told him my Social Security number. Now, the reasonable inference for purposes of this appeal, you can draw from that, is that Jimenez followed his practice, asked him for the Social Security number. Mr. Reed told him the Social Security number. He had no reason not to. In fact, he's not the subject of the warrant. And from that, we should then draw the further inference that the Deputy got a different Social Security number than realized it was a different Social Security number, and at that point knew he had the wrong man. No, no. How far do we take the inference? All that is telling the Deputy is that you have indications from the face of the warrant that he's not the subject. It's not conclusive, right? You're going to have to take him to the station, at least to the station to verify. If we go back to the probable cause analysis, which I realize you do not concede, I mean, he matches every other descriptor, name, address, physical description, date of birth. Yeah, but not all descriptors are equal. In the Baker case, they did not have dispositive proof on the face of the warrant that rules someone in or rules someone out as the warrant subject. Well, what we didn't have, what the Supreme Court didn't have in Baker was that there was nobody comparing, because I guess the Potter County Sheriff's deputies didn't have the photograph, the booking photograph, to carry with them to Dallas when they picked him up at the county jail. Well, that's going beyond the warrant. I'm saying what's different about this case, you did not need to go beyond the warrant. Just look at the face of the warrant. It included, besides all of those matching descriptors, actually three other descriptors that did not match. Two fingerprint-based descriptors, the CII-FBI numbers and the Social Security number, which is, of course, not matched to fingerprints. Now, there was no effort made by the arresting deputies to compare it. I understand where the panel is going with the arresting deputies on that. But certainly with the booking personnel, they had this information. They're also told by 1130 that Mr. Reed's fingerprints do not match the fingerprints for the warrant subject. Now, the testimony of the sheriff's personnel, whether it's Shelton Key or Angela Becerra, say, when you've got non-matching CII numbers, that means you've got a different person. Isn't the policy at that point, then, you send to the Records and Identification Bureau this particular case and ask them to do a manual fingerprint check? They say that's their policy. But that doesn't mean that the CII number is unreliable. Are you disputing that they have that policy? I'm not disputing that that's the claim they made in this case. What they're trying to do... Do you have any evidence that that is not the policy? I'm not submitting any evidence that that's not the policy. Other than the fact that there's no record that that was done in this case and Shelton Key, their designated agent, testified that everything in the booking here of Mr. Reed was in accordance with policy and practice of the Sheriff's Department. Why shouldn't we infer, to use your thinking, that they followed their policy and did send the prints to the Records and Identification Bureau? And that was why he was ultimately released the next day. Well, he wasn't released because of anything the Sheriff's Department did. He was released because somebody at the courthouse did what the Sheriff's Department should have done, punched in the CII number for the warrant subject, looked at the criminal history of the photograph and said, shoot, he's not the guy. And that's why the prosecutor told the court, dismissed his case, cut him loose, et cetera. Now, but this use of their policy to say that because we don't treat CII numbers as being reliable, we as an institution, as a department, we have to do this manual fingerprint comparison, that doesn't get them off the hook. That, rather, I would submit, indicts them because the testimony is, and again, I go back to not only Sheriff's personnel but other law enforcement personnel, that when you get a CII number via live scan, that's reliable. Well, that's not the testimony. The testimony from the sheriff's sergeant was that errors can occur, including an inability of the machine to read the digital fingerprint. I would submit that there is no human process that's been invented and there will be never a human process that is free from error. Everything is subject to error. It's not the question of does the possibility of error exist. The question is, what is reliable? What carries greater risk or lesser risk of error? I mean, doesn't your argument really come down to a negligence theory? That's what this case is all about. No. It comes down to the fact that they take a position that name and birth date, that's absolutely reliable. You can depend upon that. That's good. That's solid information. We don't need to worry about things like identity theft. We don't have to worry about different people sharing the same or similar name and birth dates. Well, you would concede that they don't need to resolve identity theft in the field when they stop someone and they match all those descriptors. I don't think it is possible in all cases to do that. Certainly by the time, you know, maybe in some cases. What about in this case? I mean, should the officers have resolved it at the stop? I would say they should have called in the CII number. But let's go to the station. By the time the person's at the station, right, they have the resources of the station. He's live scanned. The information comes back. There is no indication whatsoever that there was a faulty transmission or that the fingerprint images didn't go through or that there was some other mistake or error that played out. Everything indicates in this case that the CII number came back stating, hey, this is going to be his CII number starting with 301 because his fingerprints do not match any other set of fingerprints on file. Mr. Cooke, do you want to save any time? Yes, 58 seconds. Thank you. Okay, very good. We'll hear from the county. Good morning, Your Honor. Scott Caron for the county. I'd like to start with Read 1 and specifically this contention by the plaintiff. It's really the plaintiff's primary contention, which is that there is no probable cause for an arrest or a detention. As a matter of law, if the CII number on the live scan return does not match the CII number, on the warrant. And that's the primary contention that the plaintiff relies on, both on the issue of constitutional violation and Minnell policy, practice, or custom. The problem with that argument is there's no authority for it. There's no valid authority for it. The primary case the plaintiff relies on for that proposition is West v. Cable. And West v. Cable stands for an entirely different proposition of law. Rather than valid, you're saying there's no clearly established or law on that point? I should have been more articulate, Your Honor. What I meant to say was that the case that the plaintiff relies on, the primary case, does not support the proposition that the plaintiff is citing it for. In West v. Cable, you had a warrant seeking the arrest of James West. That's it. That was the only descriptor on the warrant, the name James West. The plaintiff's name was Vandy West, and there was evidence that he had never gone by any other name. So naturally, the conclusion was that there was no justification to arrest Vandy West on a warrant where he didn't match any of the descriptors on the warrant. It's completely inapplicable to this case. Plus, we can tell the only descriptor was the name, right? In West, correct. The only descriptor was the name, and the plaintiff did not match that descriptor. It's completely inapplicable to this case where you have a warrant that had 12 descriptors, and the plaintiff matched 10 of them. West does not stand for the proposition that a single variation of description does away with probable cause. In fact, we've cited a number of cases in our briefs. If you look at our answering brief in Read I at page 28, a number of cases for the proposition that a single variation descriptor does not do away with probable cause. In fact, one of the cases that we cited was Johnson v. Miller, a Seventh Circuit case in which the plaintiff satisfied all of the descriptors on the warrant except one, and the one she didn't satisfy was race. The warrant sought the arrest of a Caucasian. She was an African American, which would seem to be a pretty strong descriptor, but the Seventh Circuit still held that there was probable cause for the arrest. Let me ask you about the Social Security number. Sure. Did the arresting officers receive Read's Social Security number on their MDT? You state in your brief that they did not. I'm looking at Read at 9. But the information attached to the declaration of Johanna Williams suggests that they did? In the field, they did not have the Social Security number. It did not come through the MDT. What Johanna Williams submitted attached to her declaration was a query that was sent at the station. If you look at the location where that query was sent, it was sent from the station. And so the argument that the plaintiff raises is, regardless of whether they had it out in the field, that they had it at the station. The problem with the argument about the Social Security number is that the plaintiff admitted at his deposition that he did not have any documentation to prove what his Social Security number was. The plaintiff says, well, if they had asked me, I would have told them what my Social Security number is. I know my Social Security number. They could have just asked me. But, of course, if there's no verification of what his Social Security number is, the officers can't take that at face value, especially where they're looking at a warrant that matches the description of the plaintiff in almost every other respect, aside from CII number. So they didn't have it in the field? Correct. They did not have it in the field. The evidence that the plaintiff presented was that they had it at the station. And the arresting officers were the ones who pulled the whiz. Is that on the warrant information sheet, or is it some other query? That is the warrant information sheet. That's the evidence that the plaintiff presented. That wasn't pulled up until they actually arrived at the detention facility? Correct. That was at CRDF. So they did not have it out in the field, which, again, only supports the proposition that there was probable cause for the arrest. So then what was the significance of the statements on the MDT that the warrant subject, quote, may be the same as a CII number and that the officers should, quote, unquote, immediately confirm with the Lenox station? Yeah. That was essentially pulling the CII number from the warrant, that the subject of the warrant, that the individual may be that subject with that CII number. It later turned out that he was not. As we know, the warrant had a CII number. And so that information that came over the MDT concerning the CII number was pulling that CII number from the warrant. But assume that the CII number matched his brother, right? Correct. It matched the true warrant subject, which was his brother. But, of course, out in the field, you know, they have one CII number. They have the CII number that comes across on the MDT. They have no way to verify his CII number out in the field. They can only do that back at the station. When they brought him back to the station, they proceeded with the booking procedure, and they had to go back out into the field. So they left him and they left the booking personnel to continue with the booking process, which included the live scan. They were no longer there at the time the live scan was done. They weren't there when the live scan return came back. And I assume that the other descriptors were obtained by the arresting officers at Lenox, where that person was originally booked. Is that right? When you say the other descriptors, I believe that the descriptors that matched. The descriptors that they had out in the field, I believe, were name, date of birth, and there may have been some physical descriptors as well. Physical descriptors, a vehicle description, a license number. And maybe California driver's license number. That was one of the... All match. All match. And as the record shows, that was because his brother was using his identity. As it turned out later, yeah. It was a case of identity theft, essentially. Is there any evidence in the record that this Mr. Reed, present in court today, ever told anyone that his brother had been using his identity? No. In fact, that's a good point. The only evidence of what Mr. Reed told the officers, Mr. Reed testified that, at the point of arrest, he informed the officers that he had a judicial clearance and that he showed them the judicial clearance. Now, our officers don't remember reviewing it, but Mr. Reed testified that he showed it to them. They took him back to the patrol vehicle, came back, and said, this is for a different warrant. And we know that that is correct. It was for an entire... He then said it was his brother, that the identity theft. Do you think that would be a stronger case for Mr. Reed? I don't think so. Well, because someone in your family is going to... If it is someone in your family, they're going to know a whole lot more about you and have access to a whole lot more than someone that maybe took something off a credit card or something along those lines. I don't think that the officers would have been justified. Let's say that he had said that my brother has been stealing my identity. This other warrant that was cleared on belongs to my brother. He never said that. But let's say that he did. I still don't think that the officers would have been justified in releasing him out on the field based on the assumption... Well, that's not exactly what I asked. They might not have been justified. But would it have been a stronger case for him if he would have said the identity theft was his brother? I would have a harder time arguing that there was probable cause for the arrest in that circumstance. So is that a yes or a no? I suppose it's a yes. At what point in time did the deputies or the staff collectively have information so that there was no longer probable cause? I don't think they ever did. Well, we know at some point in time he was let go in court the next morning. Right. So working backwards from that. So at that point you concede that there was not probable cause. I wouldn't say that. I would say that they released him because there was information there. And we don't know what information they learned. We know that somebody went to a computer terminal, typed in some information, got some information back, and concluded he wasn't the warrant subject. But the court's question goes to... My theory here is that you've got elements that support probable cause, but if you know through development of technology, the next generation of DNA, they know this isn't the guy. They've got 17 identifiers that match, but they know this isn't the guy. Do you have probable cause in that situation? If they know he's not the guy, if they have independent knowledge that he's not the guy, no, this isn't probable cause. So the fact there are a lot of identifiers that match doesn't overcome the fact that there may be absolute knowledge he's not the guy. No, I'm not saying we have that here. Okay. At some point in time, the conclusion was reached, he's not the guy. Sure. Court the next morning. Now, working backwards, at what point in time was there sufficient information for the Sheriff's Department to have figured that out? Well, my point is, and this is why I started with this discussion of CII numbers and why a difference in CII numbers does not necessarily do away with probable cause. I don't think that prior to that point there ever was a point where there was no probable cause. This is why the... What did they have in court the next morning that the Sheriff's Department didn't have? We don't know because we don't have the testimony of the individual who conducted the investigation, so we don't know what information that individual pulled. Could have pulled, you know, maybe saw the CII numbers, maybe pulled the criminal history information and... But did the DA's office do that? No. Or was it the Sheriff's? I believe it was a clerk in the court. Well, would they have access to more information than the Sheriff's Department would have?  The court issued the warrant, right? So presumably they have a file. They don't necessarily have access to the file. I've seen cases like this where it takes, you know, weeks, days, sometimes even weeks to get the file. But the court clerks have systems that hook up with the jails, too, though. I mean, there's... So you think that the court clerk did something with the DA? There's a direct interface between the court and the Sheriff's Department.  That's why only certain people can make entries in the computer... Correct. ...because otherwise people could actually get people out of jail... Correct. ...if they could get on the computer. Correct. Unfortunately, we don't know what information was pulled. And my... Do you have any reason to think it was information that wouldn't have been available to the Sheriff's Department? It might have been. But that goes to the issue of whether or not there's an obligation to conduct an investigation if you have an arrest based on a match to a warrant and the arrest is based on probable cause. And, again, I have to go back to this point that the difference in CII numbers does not by itself do away with probable cause. It may be a red flag and it may cause the Sheriff's Department to conduct some kind of an investigation. This is why we have the fingerprint identification policy that the court referred to earlier. That policy requires Sheriff's Department personnel, booking personnel, to take the live scan printout, compare it to the warrant, and if there is a CII number on the warrant, compare both CII numbers. If the CII numbers are different, then request a manual fingerprint comparison from the Records and Identification Bureau. We have that policy specifically. What happened here? We don't know. And, honestly, how do you get summary judgment based on we don't know? Well, we got summary judgment based on the fact that we have policies and procedures that are specifically designed to prevent this sort of thing from happening. And at the very most, the plaintiff has shown that maybe in this particular case those procedures were not followed, but a single isolated incident of not following a procedure or a policy is not sufficient under Monell. The plaintiff has to show a longstanding, widespread institutional practice that resulted in the constitutional violation. Would the person who didn't follow the policy, if that's what happened, be individually liable? It might be. Do we know who that person is? We don't know who that person is. Is that a Fourth Amendment violation or is it a Fourteenth Amendment violation? It depends on what point in the proceeding you're talking about. Our position is that the arrest is governed by the Fourth Amendment and that once there has been a matched arrest, matched to a warrant, with probable cause, probable cause meaning that the officers have reasonably identified the suspect to the warrant, that the Fourth Amendment drops out of the picture. And at that point, the Fourteenth Amendment governs the plaintiff's claim. At that point, the plaintiff is lawfully in custody based on an arrest based on probable cause. And at that point, the Fourteenth Amendment procedural due process comes into play. And at that point, it's a question of whether, you know, when he complained and said, I'm not the subject of the warrant, which, by the way, in this case, there's no evidence that he said, I'm not the subject of this warrant. What he said was, I have a judicial clearance for this completely different warrant. But that's another issue. The question then becomes under Fourteenth Amendment procedural due process, what does the sheriff's department say? Was it likely he knew the number of warrants that were outstanding for his brother? I'm sorry, I didn't hear the question. Was it likely that he knew how many warrants there might have been outstanding for his brother? I don't know. I mean, it's not hard for me to understand someone responds with exasperation. I've been through this. I've got this clearance. Without knowing, his brother's been off and done something else, and there's still another warrant. So his denial seemed pretty clear that it's not me. The plaintiff actually testified, and this is what he said. He said that every time he complained to sheriff's department personnel, he referenced the judicial clearance, and he said, I should get out because of this judicial clearance. Wouldn't he? Not only that. I mean, think about it for a second. If you're being held, you've got this judicial clearance. That sounds official. And you're not likely to be focused on the fact that my brother's gotten involved in trouble more than once, and this clearance speaks to one, but maybe it doesn't necessarily speak to all the others. I mean, I don't know that his objection is so narrow as to justify disregarding it just because there's a different warrant out there. This is what he testified to at his deposition. He said that after the officer came back to his car and said, yeah, I looked at this judicial clearance form, and it relates to another warrant, and so it doesn't get you out. The plaintiff said, well, at that point, I thought maybe it is my warrant. He testified to that at his deposition. He actually, he was unsure himself as to whether this was his warrant or a warrant for his brother like the other one that he had been cleared on. So it's hard to say that his complaints were sufficient to trigger the disputed warrant verification procedure. But certainly, the Sheriff's Department has policies and procedures that are designed to prevent mistaken detentions, mistaken arrests on warrants. Regardless of whether or not those policies were followed in this case, at the very most, the plaintiff has shown one single incident of not following the policy. The primary ground on which the district court granted summary judgment as to the entity defendants was on policy, practice, or custom. The plaintiff presented no evidence at all that the Sheriff's Department has a longstanding widespread practice of not following the fingerprint identification policy. And so this court should affirm on that ground, as well as all the other grounds stated in our briefs. Thank you. Thank you very much. Mr. Cook, you've got about a minute left. Yes. The statements by defense counsel about Mr. Reed's testimony are false, and I'll submit a follow-up letter. It really was sanctioned. We've got his testimony in the record. All right. Gant v. County of Los Angeles, a district court decision by Judge Fees. Identical twins. My client arrested on his twin brother's warrant. Everything matched but CII numbers. Judge Fees said the arresting agency there was liable under a 14th Amendment standard in ignoring the non-matching CII numbers because they were so dispositive as compared to all other identifiers. The record is that fingerprint matched identifiers are the gold standard. Here they didn't match. By 1130 p.m. on May 3rd, right, they've done the live scan on Mr. Reed. They know per the CII numbers the fingerprints don't match. At that time, probable cause justification to detain, to hold him dissipates. So would your point be that that's the part where we stop looking under the 4th Amendment and then apply 14th Amendment jurisprudence? I say it's a 4th Amendment analysis, period. All the way through. All the way through. If that doesn't work with you, then I'm at the 14th Amendment, okay? And you're out of time. Right. Thank you. Thank you very much, Mr. Cook. The case just argued is the two cases just argued are submitted for decision. The next case on the calendar.
judges: Tallman, Clifton, Callahan